The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw a knight and give their attention, for the court is now sitting. God save the United States and this Honorable Court. Please sit, please. All right, the first case we're going to hear is White v. White. Mr. Cullen, when you're ready, we'll hear from you. May it please the Court, Your Honors, Stephen Cullen and Kelly Powers on behalf of Malcolm White. Your Honors, everyone in this case agrees that both Mr. White and Mrs. White have joint parental authority under Swiss law. That's probably universal throughout the world, that parents have joint parental authority over their children. Judge Neal, I wish I could agree with you on that, but that is not the case. In countries as close to our system as England, there are many fathers that do not get parental responsibility. I'm talking about getting it. I think you're equating custody with joint parental authority in your briefing. And I think joint parental authority, from what I can figure out, refers to the relationship between a parent and a child in a family. Whereas custody refers to the right to control the child, especially in a court order, either before divorce or after divorce. Let's stay away from that term because custody is what's in question, right? No, Your Honor, that's not correct. That's not correct because if you take that analysis, then you are not applying Article 5 of the treaty. The treaty says you have to step beyond our understanding of these types of semantics, that the concepts set forth in Article 5A of the Hague Convention are semi-autonomous concepts that are not tied to our notions of custody or visitation or those kinds of rights. But the Swiss court pretty clearly communicated to Mr. White, did it not, that as the person possessing sole physical custody, Mrs. White had the authority to remove the child from Switzerland without Mr. White's consent? No, that's not correct. No? No, because the lower court... The Swiss tutelary court did not send Mr. White a letter? Yes. Okay, why is that not something that bears on this case? Because, Judge Keenan, if you take the approach that that item set forth in that letter trumps the... I'm not saying it trumps it, but I'm saying it informs what we're doing today, does it not? That if the Swiss court itself says that the distinction is sole physical custody, and if you have it, you have a right to make that determination, that's something we have to consider in this case. So tell me, if you would, what weight we accord that? No weight at all, because of the actions of Mrs. White. Well, well, well, well, well. What if the Swiss court had said, no, she had no right to take the child? What authority would we accord it then? Controlling weight, according to you. See, you can't have a sliding scale. You can say, yes, that's something, but the fact that I think your second argument is that she took it not in the best interest of the child, and she lied about the reason she took it, and therefore that trumps what happened. But you've got to acknowledge that what the Swiss court said Swiss law was is something that we look to at the outset. That's what the Hague Convention tells us to do. You look to it, Judge Motz, you look to it de novo. You look to the legal analysis that the lower court. Well, I don't know what you mean by de novo. We're not the Swiss court, so we're looking at what the Swiss court did. We're not redetermining what Swiss law is. That's what the Swiss court to tell us. No, I don't agree with that, Judge Motz. And the reason I don't agree with that is that's not what the treaty itself and the jurisprudence of this country tells us to do. It says you look, you look to the foreign law and you yourselves draw your own legal analysis from your analysis of that foreign law. You do not have to accept one side's view of foreign law or the other side. To be sure. But if the Swiss if the highest court of the of this jurisdiction, which you are talking about, has opined about the law of that state. In our assessment of the law of that state, just as in our assessment of the law of Nebraska, we look to the highest court of Nebraska's law. Our assessment of Swiss law, we look at the Swiss court's law. No. You look at the Swiss court's law within the confines of Article 5A of the treaty. But what part of Article 5 says you are free to disregard the law of the state? That's a very good question. The the Article 5A, Judge Motz, tells you to take a semi-autonomous approach to all of these concepts in the context of. Well, I don't know what law you want us to look to or whether you want to make things up, because the question we have here is whether Mrs. White had custody, exclusive custody. You say not so. And I don't know what you're looking to. You'll have to explain to us why she didn't have exclusive physical custody over this child. Well, Judge Niemeyer, I agree with you. You've said two things there. And I agree with the second point. She did have physical custody. There's no question about that. But they had joint parental authority. Now, you tell me I'm not to use that term. But that's what they had. And that's what we're finding. Of course. But that means something different than custody. And the Swiss have explained it. And you refuse to accept what the Swiss courts have said. No. No, we don't. You want us to take this notion that every parent has joint parental authority. And I think that sounds to me like natural law almost. It goes without saying that every parent has joint parental authority over their children. Now, when you get into a breakup of the marriage, a divorce, this is preliminary to the divorce, a separation agreement, and a court says we're going to divide the custody and give you joint custody, that's something else. But the court didn't do that. The Swiss court gave her exclusive physical custody and gave the husband, Mr. White, visiting rights. And that's what seems to me is conclusive. I can't figure out why we should reinterpret what the Swiss have done in this case. We're not asking you to reinterpret it. But what we are saying is the right that he has that no court took away from them. You call it a natural right. The English call it parental responsibility. Look, let's give you I'm going to grant you everything you want to get under this notion of parental joint parental authority. We still have a Swiss court saying she now has exclusive physical custody. Right. Now, what are we supposed to do with that ruling? Right. Well, she can't have physical sole physical custody and operate that sole physical custody in such a way that Mr. White never sees his son again because then who says that? Article 5 says that if you have a right relating to the care of the child, that right is. So you want us to overrule the Swiss courts and the Swiss courts interpretation of their own rulings? No, no, that's not what we that's not. I must say, I am finding your argument very difficult to follow because everything that is suggested by the record, you're just saying that's not so. That's not so. And you've got to give us some way to read it your way. Now, the question is, Mrs. White was awarded sole physical custody of the child. Yes. She brought the child to the United States using that custody. Then a court explains that she had a right to do that. A Swiss court said she had a right to do that. Now, obviously, those courts knew of this notion of joint parental authority, but they still concluded she had a right to take the child to the United States and not violate the custodial order. How are we to construe that otherwise? OK, you can screw it. Otherwise, Judge Niemeyer, if we can step back for a moment and look at why we have this treaty and we have this treaty. For the very reason that operates in this case, everyone agrees that the child's habitual residence at the time was Switzerland. That is not disputed, Judge Niemeyer. Everyone agrees that there was a custody. Is the custody order disputed? Is the custody order? No. Everyone agrees they had joint parental authority. No, no. That isn't what I asked. Joint parental authority is not custody. The Swiss court ordered exclusive physical custody to Mrs. White. And you agree with that? Yes. We've never disputed. Now, when a Swiss court orders sole custody to the wife, physical custody, do you agree that the wife is entitled to take the child to the United States? She is entitled to operate in such a way that. I asked a question about whether she's entitled to take the child to the United States. She would be entitled to take the child to the United States in certain circumstances, but certainly not the circumstances in this case. All right. This is fair enough. So your argument is there are exceptions to how she uses that custody. And if she uses it abusively or wrongfully, then you have some arguments. And your argument is that she did it, I gather, to remove the child from the husband's visitation rights, as opposed to her claim that she came to the United States to visit a sister or to get medical treatment. And with respect to that, we have factual findings. And so now you have to make the argument as to whether they were clearly erroneous. Right. I don't agree with the way you have crystallized what I think you think my argument is. I'm suggesting we're the only place you can go. You have to come with an exception. No. I was trying to explain to you that the purpose, if you juxtapose the very reason we have this treaty between these two countries and another 84 countries, and put the context of this case in that, one can only come to the conclusion that you have to find that Article 3 applies here. As I was trying to say, everyone agrees, Judge Niemeyer, that the child's habitual residence was Switzerland. Everyone agrees that there was a custody case. There was expert evaluations. The mother had been evaluated. The father had been evaluated. The Swiss court was about to evaluate the child. But did not before she left. Correct. And before there was an opportunity to evaluate the child, she absconded with the child. Now... Well, that's your characterization of the term. She elected to remove the child from the country. Under ICARA, don't you have to show a wrongful removal in order to obtain relief?  Okay, what is the basis? Wrongful means certainly against the law, inappropriate. It has to be more than that, though. There has to be an abuse of rights under Swiss law. Isn't that correct? No, that's a complete... I thought it had to be an abuse of her right of removal. I thought that's what you said. That's our second argument. I'm still trying to, as best I can, answer Judge Niemeyer's question, Judge Moss. There are two arguments... Okay, tell me your first argument. I've got your reliance on the treaty and the 50 nations and so forth, but get right to the issue. All right. So, right to the issue is I have to answer Judge Keenan. And Judge Keenan's question was, where's the wrongfulness? The wrongfulness is that her actions disregarded his parental authority rights. Right. The Swiss court says that the sole custodian, the Swiss Supreme Court says the sole custodian, the exclusive holder of custody is allowed to move abroad without committing any kind of offense or wrongful act unless the party's actions are an abuse of rights which would constitute a relocation without reasonable grounds such that it intended to compromise the personal relationships between the child and the parent. Yes. So your argument is, I take it, that this action was taken by Mrs. White to compromise the relationship between the child and Mr. White. Okay? That's what I thought your argument was too, but you say that's your second argument. Yeah, we have... Well, that's your only argument. The first argument is, as set forth on page three of our reply brief, founding on Whelan and the explanatory report, our first argument is, her very actions in disregarding his joint parental authority, that is also an article three violation. No, no, no, but the Swiss courts decided that against you. Well... I mean, it said there can be an abuse, and that's what I thought your argument was. Well, it's abuse. That you can do this, and I thought earlier in response to Judge Niemeyer said, yes, you could do it in the proper circumstances, but you couldn't here. No, you couldn't... No, you didn't say that? Yes, yes, we did say that, and of course it was abusive, because she, Mrs. White, says, I'm going on holiday for a few days, and she never returns with the child, ever. And so the ongoing custody case can never be concluded, and judges, what I hope you want to inquire is, okay, having lost the Haig case, surely she's gone ahead and filed in Virginia. And of course, you can imagine, nothing has happened, because the case is still ongoing in Virginia. But you had made that argument to the district court, did you not? That it was abusive, it was an exception to the right to remove? Yes, we did. And the district court found facts against you, right? I don't know how, based on what that... I'm asking you, did the district court find facts contrary to your argument? The district court, in a footnote, said here... It would help if you wouldn't parse it, you know, it either ruled against you or ruled for you. Well, the court ruled against us. Yeah, and he made factual findings that it was not abusive, that she came legitimately for holiday and for the health of the child. And as far as the basis for those findings, the district court had witnesses testify. It wasn't like the district court drew these facts out of the air. And the district court also made a specific conclusion that she did not take the child to the United States for the purpose of separating the child from the child's father, and frustrating the father's right of access. I mean, that's exactly what the judge found, so why is that clearly erroneous? What evidence is there in the record to show that the judge's factual finding that the mother did not take the child out of the country for the purposes of frustrating the father's rights? What evidence is there, to the contrary, that you can show us that the district court was clearly erroneous when it reached that conclusion? This is important, Judge Keenan, and I want to... I had reserved some rebuttal time, but I'd like to just use all my time now. I have about a minute left. No, no, you're this regular. Go ahead. So, it's not a clearly erroneous standard we're before you on. We're on a de novo standard. You can look at the whole... That's not de novo. That's a factual finding that the district court made. The district court said that the mother did not remove the child for purposes of limiting the father's access to the child. That's a fact. Right, and that... you can look at the whole record de novo in a Hague case, and it's clear that her only motivation was to prevent... Where do you get that principle? I beg your pardon? We're in an American court applying the Hague law, but we have our review of factual findings by a district court is limited. It's deferred. We defer to the district court, and only if the district court is clearly erroneous, there's no substantial evidence to support the finding, we'll review it. Isn't that the standard? Not according to Waylon and Chief Judge Lynch in the First Circuit, no, your honors. I'm out of time. Thank you very much. I thought... is that... you're not out until it's red. I guess it's now red. All right. Thank you, Mr. Cullen. Mr. Johnson? Thank you, your honors. May it please the court, I'm Michael Johnson from Arnold and Porter, appearing on behalf of the respondent appellee, Sudebay White. With me at council table is my very learned colleague, Stanton Jones. The panel, I think, has put its finger right on it. At Swiss law, Ms. White had sole physical custody of the child. Mr. and Ms. White agreed to that, and the Swiss court reduced it to an order. Now, Ms. White removed the child from Switzerland over Mr. White's objection. I think we're aware of what you're relying on in the Swiss orders. But the Swiss court did award visitation rights. Yes, it did, your honor. And are those visitation rights separately protected under the Hague Convention? Or are we... do we cabin this under the custody heading? There are two issues embedded in your question, I think, your honor. First, does the Hague Convention protect rights that are not rights of custody? The convention addresses them, and it says they are to be protected. But the remedy sought here, return of the child to the home country, is not available. Not available unless there was a breach of the left-behind parent's rights of custody. Which is one of the arguments that Mr. White makes. I mean, apparently he has another argument, but I haven't been able to discern that. But that is an argument that he makes. Yes. He has a right under the convention if there's been a breach of his right of custody. Absolutely. He has a right of custody. For purposes of today, we don't need to decide whether joint parental authority is or is not a right of custody under Swiss law or under the Hague Convention. Because whatever happened here, it couldn't have breached any of Mr. White's rights. The Swiss court rulings are very, very clear. When a parent has been awarded sole physical custody, that parent has a superior right to relocate... If she had taken the child for the reasons that Mr. White states, why wouldn't that have been... If he has a right of custody, why wouldn't that have been a breach of his right of custody? It may have been, but let's remember... Your argument is, I think, you're relying on the findings of the district court here. Of course we are. In your response to me, you said the Swiss court found X, Y, and Z. But that's not what you're relying on in saying there's no breach. What you're relying on in saying there's no breach is the federal district court here, isn't it? Absolutely. I was speaking not of the Swiss court in the White v. White matter. I was speaking of the underlying Swiss law, the Swiss precedent. But it made findings of fact in determining whether that Swiss law was applicable, right? The Swiss law applies, certainly. No one disputes that. The district court said, I need to look to Swiss law. And Swiss law gives the mother the right to relocate with the child, except where there's an abusive right. I've had testimony before me. I've heard the mother. I've heard the father. I find there was no abuse. Absolutely. And those findings were correct? Could that change if the mother, Mr. Cullen suggests that the mother is not just on a temporary holiday or health care trip, but that this is a permanent relocation and that it's not changing. Would that, is that a changing fact that could be reviewed again at some point? No. This removal has to be evaluated under the circumstances as they existed at the time of the removal. The district court did that. Well, let me ask you this. This is a hypothetical. What if Mrs. White said to a girlfriend, I came over here for legitimate reasons. I came over for holiday and for health care. But we're enjoying it so much over here. And our child is doing so well, I've decided to stay here permanently. And that fact develops. How would that impact Mr. White's rights? Only in the sense that he might want to take that to the family court in Fairfax and see if the family court thought that affected the custody arrangement. That's his remedy. Would he go back to the district court and argue under the Hague Convention that it's now an abuse? He could try, but it wouldn't work. This is a removal case, and the facts must be reviewed as they existed at the time. Well, they are. They have been reviewed, and the district court did make findings at this point. But my hypothetical creates additional facts based on changing circumstances, and Mrs. White now determines she will never go back. Let me back up slightly. What is Mr. White left to do? Go to the family court in Fairfax. Okay, can I change the hypothetical slightly and suppose that Mrs. White had written a letter contemporaneous with bringing the child here saying, I fooled everybody. I brought the child because I wanted to keep the child away from my husband. Nothing to do with the health of the child or anything else. I lied on the form. And that letter, which she acknowledges she wrote, so there's no evidentiary problems, comes to light. So that's contemporaneous then. Then what happens? 60B relief in the district court, reopen the judgment. So it has to happen within a year? I think there's an exception for manifest injustice that can come at any time. So it would be part of the Hague. I understand that. To my knowledge, there's no such letter. But I'm hypothesizing this. So that would be, again, that would be under the Hague Convention. She wouldn't have to go to the state. He wouldn't have to go to the state court. Correct. If new evidence came to light that at the time she did it. Well, that goes to the fact that the court just didn't know and we're trying to correct the record. I'm trying to hypothesize a circumstance where we now have converted in good faith, but she now decides that her son is thriving here. He's now going to enter school and kindergarten and his medical condition is improving so. And she attributes it to her surroundings. And she now declares, and I'm going to make the evidence as clear as can be, she now declares, I am changing my mind. I'm now going to stay here permanently. Now the question is Mr. White still has some rights at some point. And you're saying he has to go to family court? Why couldn't he say that this now is an abuse under the Hague Convention because while she removed it with proper intent at the time of this case, she has changed her mind and now it's abusive. Look, he could bring that case and try that theory. The problem is under the Hague Convention one must make a choice, bring the case either as a wrongful removal, which is what this case was, or as a wrongful retention. A wrongful retention arises when the child is relocated out of the home country with consent. That is both parents agree I'm going to take the child to Spain for the summer. Then the end of summer arrives and the parent says, oh, circumstances have changed. So we're not. Does the Hague Convention address that? Yes, it does. But this case. That's a different cause of action? That's a different claim, and it's one that can't apply here because the removal was over the objection. Anything alleged wrongful that happened happened at the time of the removal under Swiss law. Except the courts have said it wasn't wrongful. Correct, it wasn't wrongful. So now don't we have, if she changes her mind, don't we have wrongful retention? No, because wrongful retention only arises when there's a consented to removal and the removing parent then changes their mind. That's not what happened here. In this case, Mrs. White exercised her right under Swiss law to remove the child over Mr. White's objection. So the removal was appropriate, as the court fined under your argument. The removal was appropriate. When she now says, I'm staying here permanently, what's Mr. White's remedy? To go to the court in Fairfax and seek to protect his limited rights. Look, he has rights. No one's saying he doesn't. And these parents should cooperate. And Judge Ellis, I think, did a marvelous job of doing everything he could to encourage the parents to cooperate. But remember, the convention is a convention on international child abduction. It requires a wrongful removal. It's not a convention on- I get that point. But I'm struck by Mr. Cullen's argument that she is now here permanently and is never going back. Now, there's no evidence right now that supports that. But it's not an unlikely possibility. Well, that's a case for another day, Your Honor. This case is about wrongful removal. Mr. Cullen's argument is sort of a, she came here over his objection, so it had to be an abuse of rights under Swiss law. There's just no basis for that at all. The Swiss Supreme Court decisions we cite in our briefs confirm that the abuse of rights doctrine under Swiss law is very, very narrow. The case we cite at roughly page 1230- The district court made factual findings in your favor on this issue. Yes. And so our debate at that point should be to review whether that factual finding was error right. Correct. The factual finding has to support an outcome under Swiss law. What's your argument that we get to look at the facts de novo? You don't. It's a clearly erroneous standard. This court has precedent on the point. Factual findings are reviewed for clear error. So really, we take the district court's factual findings- Do you refer to the Wayland court, First Circuit? Did they hold that the court can review facts de novo? We review the district court's factual findings for clear error and its interpretation of the convention de novo. Correct. That's what the First Circuit said. So the factual findings- Sounds a lot like what we were saying. I don't think there's a legitimate question here. There's some confusion perhaps, but no question. What is contained in that quote is the argument that Mr. Cullen was making that we interpret the convention- It's a question of law. We do it de novo. We look at it de novo and we don't accede to what the Swiss court said necessarily. So what do you have to say about that? I don't think that's correct. I think it is correct. Well, I think- I don't understand why we- that's a question of law. Why wouldn't it be like every other question of law that we review de novo? I'm sorry. I thought I may have misunderstood Your Honor's question. We are going to be reviewing its interpretation of the convention de novo. I agree with that. But what Mr. Cullen wants to do is then say, well, we can then expand the rights of custody to overcome the Swiss law of custody. That there's some sort of separate, superior, international law under the Hague Convention that can tell the people in courts of Switzerland what their custody law should be. So you think in going and looking at the Hague Convention procedures de novo, what are we supposed to do? Supposed to do what the Second Circuit said in the O'Zalton case, which we submitted under our Rule 28J letter. I think the Second Circuit described it very succinctly. The definition of rights of custody under the convention is an issue of treaty interpretation and does not depend on the domestic custody law of the country of habitual residence. So it doesn't matter what Switzerland- That's fine to quote that to me. But tell me in your own words what we are to do when we interpret the terms of the convention de novo. You look at the text of the convention. To do what? Look at the text of the treaty, which says in Article 12, the remedy of return is available only where a removal or retention is wrongful under Article 3. Then look at Article 3 and say, what does this mean? And what Article 3 says is a removal or retention is wrongful when it's in breach, in breach, in breach of rights of custody under the law of the home country. And then determine whether it's been in breach of the law of the home country. What do we do? Then you order the remedy of return under Article 12. Well, that is the bottom line you want to be sure. But how do we get there? What's the rationale? I'm writing the opinion and then I just come to holding you in? To determine whether there has been a breach of the right to custody, what do we do? Look to the law of Switzerland. Does the convention tell us to do that? Yes. It says that that's controlling? It says Article 3 says there must be a breach of rights of custody under the law of the country of the child's habitual residence. That's what the treaty directs the district court to do and that's what the district court did. So ultimately I think the argument comes down to whether there was an abuse of rights. We know what the district court found. I think there is no basis to undermine those factual findings. So the question is when we put those facts into the Swiss legal framework, was there an abuse of rights? Now the abuse of rights doctrine under Swiss law is very, very narrow. The two grounds which are stated in slightly different words in the two Swiss Supreme Court cases we cited in our briefs are very similar. There is either no plausible motive, those are the words of the Swiss Supreme Court, no plausible motive for the relocation or the only goal, the only goal is to make relations between the child and the left behind parent more difficult. So either there was no good reason or the only reason was to make the relationship more difficult. Judge Ellis made findings on both of those points. He said there is a plausible reason. There is a darn good reason. I don't remember that language. In substance. In substance. He said I make this finding. She came here to visit a family member and to get medical treatment for the child. I think his exact words were at least close to there's no better reason. There's nothing more important for a parent to do. So that's the one case. It expresses the standards as no plausible motive or only goal is to complicate the relationship. The other Swiss Supreme Court case says substantially the same thing with slightly different words. It says the removal to be an abuse of right must be without reasonable grounds. Without reasonable grounds. That's essentially the same as no plausible motive. And Judge Ellis found of course there were reasonable grounds here. Visit the family member, get better medical treatment. The other prong, the second opinion says only intended, only intended to compromise the personal relationships between the parent and the child. Judge Ellis made a finding on that. The two Swiss Supreme Court decisions here confirm the background law. Her right of sole custody gave her a right superior to whatever rights he has. Call them joint parental authority. Call them rights of custody. Call them something else. Whatever they were, they were subject to her superior right to relocate to the United States with the child unless it was an abuse of rights. Under the standards the Swiss Supreme Court articulated, it wasn't. The Swiss Supreme Court opinions actually go even farther. One of the two, the one in the 1200s of the appendix, page 1230, specifically says it doesn't warrant a Hague Convention petition if the parent with sole custody removes the child from Switzerland unless there's an abuse of rights. The only door open here to Mr. Cullen is a... Let me ask you, does the, do the Swiss courts treat a marriage like a race, R-E-S, in which they can proceed to adjudicate the divorce? You know, in American courts, many American courts, if you're married in the state of Maryland, then Maryland has custody over the marriage, and one partner can bring the suit in Maryland and break the marriage. The other one, even if the other doesn't come to court, can refuse to do that. And the question I have is whether the Swiss treat the marriage which took place in Switzerland as a race over which it has jurisdiction, at least to adjudicate the divorce. I don't know the answer to that. I know there are still proceedings going on in Switzerland. Because the Swiss did take the position that they could not order her personally to do something because she had already left the country. That's correct, although there's... And that's consistent with our jurisdictional notions. But if Switzerland took the position, and it seems to me almost as a pragmatic matter, it must have some notion of the race because otherwise people would just absent themselves from countries and never... A person opposing the divorce would just leave the country and never... There'd never be a divorce. Or leave the state. In the United States, as we know, I think most states do treat it as a race, and the court can adjudicate a divorce. That may well be. I know that... You say those proceedings are ongoing? In Switzerland, and there are some proceedings that have been initiated in Virginia. And I just am not here to tell the court what the current status of either or both is. Anything else? Pardon me? Anything else? I think ultimately for the court to rule for Mr. White, it would have to do one of three things. It would have to rewrite the law of Switzerland. Can't do that. It would have to overturn Judge Ellis' factual findings on abusive rights. I think there's no basis whatsoever in the record to do that. Or it would have to make an unprecedented finding that would create a circuit split with the Tenth Circuit on Sheely, which has clearly held, and which the Second Circuit's opinion in Oselton and the Eastern District opinion that we provided acknowledge, that where the left-behind parents' rights, whatever they may be, are subject to a superior right in the removing parent to relocate abroad with the child, there simply is no wrongful removal. I see my time has expired. I thank the court. Thank you. Mr. Cullen? Just before you get on, do you understand the Wayland case to be what Judge Motz read there, that we review the Hague Convention's application de novo as a matter of law, but the factual findings were clear error? Yes. Yes. Judge Motz articulated it much better than I was attempting to do. I didn't have Wayland right in front of me. And really, Judge Niemeyer, that is what I've been trying to say this morning, that my learned friend's characterizations of the lower court's conclusions of what constitutes an abuse of rights as factual findings, that's not a factual finding. That is a legal conclusion by the lower court. Well, I think it's pretty clear. To the extent you're making arguments on legal conclusions, we review those de novo. Yes. And to the extent the district court makes a factual finding about historical events, those are factual findings, and we review those for clear error. Yes. One other point on rebuttal. My learned friend mentioned twice ongoing proceedings. I will submit pursuant to Rule 28J the decision that is being translated as I stand here. There has been a final decision from Switzerland which comments on their respective rights and Swiss law. And, yes, my learned friend was right. There was an attempt by Mrs. White to get before state court here, which was dismissed because Switzerland has custody jurisdiction. So I will present those pursuant to your rule. My question, I asked Mr. Johnson about whether the Swiss treat a marriage as a race, RES, so that they can have continuing jurisdiction over whether to break up the marriage or not. Is that your understanding or not? That is. That is exactly how Swiss law analyzes it. It is a RES. Yes. I wasn't going to ask you a question, but since you're going to leave and I'm not taking up your time, I understand your argument about there being an abuse of custody rights. I understand that argument. But you told me you had another argument, and I still haven't discerned that. So can you try to do that? Yes, well, I'm very hesitant because I know it's the argument Judge Niemeyer doesn't like. That's all right. We'll let you get your words out. I will hold my questions and let you answer, Judge Ma. Thank you, Judge Niemeyer. The very existence of a joint parental authority right, which is no different from parental responsibility under English law, parental responsibility under Scots law, patria potestas under Mexican law, as in Whelan, that right in and of itself is an Article 5A right. And if the actions of Mrs. White diluted that to such an extent that it couldn't be exercised in any way, such as saying, I'm coming here for a few days and then never returning, then that is a second breach of his parental authority. So these are both under the breach category?  Thank you. All right, thank you. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Barbara Milano Keenan